IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MADI LANE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. _____ |
| | § | |
| NAVARRO COLLEGE; MONICA | § | |
| ALDAMA; MICHAEL LANDERS; | § | |
| ELIZABETH PILLANS; and | § | |
| SALVATORE "SALVO" AMICO | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

MADI LANE, Plaintiff, files this her Complaint against Navarro College; Monica Aldama; Michael Landers; Elizabeth Pillans; and Salvatore ("Salvo") Amico (collectively, "Defendants") and in support thereof states the following:

## I. INTRODUCTION

**A.  Navarro College Bulldogs Cheer Team**

1. At all relevant times, Navarro College received federal funding for its academic programs activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) ("Title IX").

2. According to the NCSA, the Navarro College Bulldogs Cheer Team in Corsicana, Texas is the number one junior college cheerleading program in the nation. The team has won fifteen National Championships since 2000. In April 2022, the team secured its fifteenth National Title, as well as its sixth award of Grand National Champion for having the highest score of all the teams competing.

3. Netflix produced a documentary series entitled "*Cheer*" that features the Navarro College cheerleaders. The first season was released in 2020, and the second season was released in 2022. *Cheer* follows Navarro College's competitive cheerleaders, led by Head Coach Monica Aldama. Since first being featured on the documentary series, and Navarro's cheer program and Coach Aldama have earned worldwide recognition. Coach Aldama appeared in the twenty-ninth season of Dancing with the Stars, which premiered on September 14, 2020. She also appeared on the Ellen Show on January 19, 2022. Her husband, Chris Aldama, is the Director of Probation at Navarro County Community Supervision & Corrections Department.

4. Competitive cheerleading is not subject to traditional seasonal limitations, or other restrictions against year-round performance and training. As such, competitive cheerleading comes with a hefty price tag and requires an extreme amount of commitment from athletes, with near constant training, and frequent competition and travel. By the time most competitive cheerleaders graduate high school, they have been competing in the sport for more than a decade.

5. Plaintiff Madi Lane was a student athlete cheerleader at Navarro College during the summer and fall of 2021. Madi was recruited to the Navarro Cheer Team by then assistant coach Kailee Peppers and Coach Aldama.

6. When Plaintiff accepted a position as a freshman cheerleader on the Navarro College Bulldogs Cheer Team in Corsicana, Texas, she was a happy, successful gymnast who had plans to compete on a nationally-ranked cheer team and later make a career in the cheer field. That all changed during her first semester at Navarro College.

7. On September 2, 2021, in her university owned and controlled dorm room, Madi became yet another victim of sexual assault by a person associated with Navarro Cheer.

8. Prior to Plaintiff's arrival at Navarro College, Defendants permitted a campus condition rife with sexual assault and lacking the basic standards of support for victims as required by state and federal law. This case arises from Defendants' deliberate indifference to events of sexual abuse, sexual harassment, and sexual assaults. Defendants' failure to promptly and appropriately prevent, investigate, and respond to instances of sexual abuse and sexual harassment allowed a condition to be created that substantially increased Plaintiff's likelihood of being sexually assaulted.

9. Plaintiff's experience followed a familiar pattern—one where Defendants prioritized Navarro Cheer's reputation over the safety and well-being of Navarro College's students, cheerleaders, and guests. In fact, in the years preceding Plaintiff's assault, Navarro College had been involved in at least four nationally-publicized scandals involving its cheer team.

**B.   Navarro Cheer's Nationally Publicized Scandals**

10. The first scandal occurred in 2018 when a former Navarro cheerleader sued Navarro College alleging that volunteer cheer coach Andre McGee drugged and sexually assaulted him at a competition. McGee's "Twitter profile proclaimed he was 'best friends with' and 'right hand' to head cheer coach Monica Aldama." McGee was in charge of Navarro Cheer's new team member initiations. In the victim's civil lawsuit against McGee and Navarro College, the victim alleged that "McGee would 'slap and hit male cheerleaders' and make them 'drop their pants at his command.'" "McGee had hundreds of nude photographs of the cheerleaders and used them as blackmail to force them to 'drink and/or consume drugs,' calling it 'big girl games.'"

11. In September 2020, former Navarro Cheer athlete Jerry Harris was arrested on a charge of production of child pornography. In December 2020, he was indicted for soliciting sex and explicit photos from minors at cheerleading competitions. Harris starred in the first series of

Netflix's *Cheer*. He interviewed celebrities on the red carpet at the Academy Awards for "The Ellen DeGeneres Show." Harris pleaded guilty and was sentenced to twelve years in prison.

12. In February 2021, former Navarro College cheerleader Mitchell Ryan was arrested and charged with aggravated sexual assault against a child. The victim alleged that when she was 15 and Ryan was 23, he invited her to his apartment to practice cheer stunts and forcibly assaulted her.

13. Then in February 2021, former Navarro College cheer athlete and choreographer Robert Joseph Scianna was arrested and charged with taking indecent liberties with a child and use of an electronic communication device to solicit sex.

## C. Navarro Cheer's Pervasive Culture of Sexual Harassment, Sexual Violence, and Intimidation

14. Following McGee's departure from Navarro Cheer, Andy Cosferent took over McGee's role. Cosferant began coaching Navarro Cheer as a volunteer, but was eventually employed by the College. Cosferant is a choreographer and owns Cheer Source, which hosts cheerleading camps and clinics. He starred in seasons one and two of Netflix's *Cheer* and was known as Coach Aldama's "right hand man."

15. Upper class cheerleaders were called "veterans" and freshmen cheerleaders were called "rookies." With Navarro Cheer coaches' knowledge, approval, and expectation, veterans instructed rookies on team rules and policies. For instance, veterans instructed rookies that cheerleaders dorm together, and selected roommates for rookies. Veterans instructed rookies that cell phones should not ring during practice, and punished rookies by forcing them to run laps when phones did ring. Also, veterans informed rookies of the team's "Navarro Knock" policy, which required that team members leave their dorm rooms unlocked so as to permit members to freely

come and go with the use of a specific knock announcing their presence. Coach Aldama knew about these rules and policies and approved of them and veterans' enforcement of them.

16. Rookies were encouraged to earn the letters "FIOFMU", which stand for "fight it out, fuck em' up!" Coaches and veterans determined who earned letters. These letters were prevalently displayed throughout seasons one and two of Netflix's *Cheer*. As Women's Health Magazine explained, "Team members write it on their arms and have practice uniforms emblazoned with 'FIOFMU' that they wear on the reg. It's also frequently added as a hashtag to the cheerleaders' posts on Instagram and Twitter." A large number of the veterans have FIOFMU tattoos.

17. Navarro College's Director of Athletics, Michael Landers, instructed Navarro Cheer that letters are not allowed. Nevertheless, Coach Aldama sanctioned their use in cheer, and Landers was aware of this. Aldama is quoted in Women's Health Magazine as explaining that "It's not an uncommon thing in the cheerleading world to have letters that signify you're a part of a really special family…It's just an acronym for something that we like to keep to ourselves. It's your encouragement to make it through [the cheerleading season] and puts you together as a family." But contrary to Aldama's attractive explanation, the letters were currency in a dark game where coaches and veterans bribed rookies to run errands, party, and perform sexual favors.

18. In the spring of 2018, just prior to leaving Corsicana for competition in Daytona, Florida, veterans required rookies to attend an initiation. Veterans hazed rookies as part of the initiation. They instructed rookies to dress in black and paint their faces black, known as "black facing." Gabi Butler, a then first-year on the Navarro cheer team followed these instructions. In December 2022, Butler received criticism when her "black face" photographs were leaked in social media.

19. Defendants were aware of Navarro Cheer's pervasive culture of sexual harassment, sexual violence, and intimidation, but rather than report abuse and hold perpetrators accountable, Defendants knowingly, intentionally, and with reckless disregard for the safety of others, turned a blind eye and decidedly failed to investigate and report allegations of misconduct. Navarro Cheer's culture of sexual misconduct was promoted by intimidation and the power imbalance between coaches and cheerleaders and between veterans and rookies.

20. Given national news coverage of the scandals spanning from 2018 to the spring of 2021, Navarro College was under immense pressure to show the media, prospective and incoming students, and third parties (including Netflix and the National Cheerleading Association) that it had corrected problems with sexual violence. But rather than remedy team culture, Defendants promoted it by engaging in a campaign to silence victims and protect abusers. Defendants conduct encouraged the environment that led to Plaintiff's sexual assault, harassment, and intimidation by Navarro Cheer team members and Coach Aldama. As a result, Plaintiff suffered pain, mental anguish, emotional distress, humiliation, and was forced to quit the team and withdraw from Navarro College.

## II.   PARTIES

21. Plaintiff Madi Lane is a natural person who currently resides in state. At all material times relevant to this suit, Lane resided in Navarro County, Texas.

22. Defendant Navarro College is a State of Texas institution of higher education located in Corsicana, Texas. Navarro College may be served with citation by serving its VP of Operations and Title IX Deputy Coordinator-Personnel, Marcy Ballew, at Navarro College, 3200 W. 7th Avenue, Albritton Building, Room 3145, Corsicana, Texas 75110.

23. Defendant Monica Aldama is a natural person who at all material times relevant to this suit resided in Navarro County. She may be served with process at her regular place of employment Navarro College, 3200 W. 7th Avenue, Corsicana, Texas, 75110, or wherever she may be found.

24. Defendant Michael Landers is a natural person who at all material times relevant to this suit resided in Navarro County. He may be served with process at his regular place of employment Navarro College, 3200 W. 7th Avenue, Corsicana, Texas, 75110, or wherever he may be found.

25. Defendant Elizabeth Pillans is a natural person who at all material times relevant to this suit resided in Navarro County. Pillans is the Title IX Coordinator at Navarro College. She may be served with process at her regular place of employment Navarro College, 3200 W. 7th Avenue, Corsicana, Texas, 75110, or wherever she may be found.

26. Defendant Salvatore ("Salvo") Amico is a natural person who at all material times relevant to this suit resided in Navarro County. He may be served with process at his regular place of residence, Navarro College, 3200 W. 7th Avenue, Corsicana, Texas, 75110, or wherever he may be found.

### III. JURISDICTION AND VENUE

27. This Court has original jurisdiction under 28 U.S.C. §1331 over the Plaintiff's claims arising under federal law.

28. Under 28 U.S.C. §1367, this Court also has concurrent and/or supplemental jurisdiction with the courts of the State of Texas over claims arising under the laws and Constitution of the State of Texas.

29. Venue is proper with this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas.

### IV.   FACTUAL BACKGROUND

30. On March 1, 2021, Plaintiff, a senior at Midland Christian High School attended a clinic at Navarro College to try out for its cheer team for the 2021-2022 academic year. Both Coach Aldama and assistant coach Peppers were present. Aldama asked Plaintiff if she was trying out anywhere else, and Plaintiff informed Aldama that she intended to try out with Trinity Valley Community College's cheer team the following day. Trinity Valley is ranked as the number two junior college cheerleading program in the nation. Aldama told Plaintiff that she could have a spot on Navarro's cheer team if she would accept it that day. Plaintiff accepted the spot that day. She did not try out for any other collegiate cheer teams that spring. On Wednesday March 17, 2021, Plaintiff signed official papers at her high school accepting the position on Navarro College's cheer team. Plaintiff attended cheer camp at Navarro College that summer and began classes that fall. Plaintiff was to room with fellow rookie Emmalynn Donvito ("Emma").

31. Plaintiff was initially shocked at the atmosphere of Navarro Cheer. Cheerleaders engaged in extreme partying, drank alcohol excessively, and abused drugs. Many female cheerleaders often snorted Adderall to encourage weight loss. Weight is an important factor when performing air stunts.

32. Plaintiff abstained from engaging in this atmosphere and had no interest in earning letters. She was studious and had the highest GPA on the team. She served as the team tutor, and assisted other rookies with homework and writing essays. Plaintiff's long-time high school boyfriend, Tristan Marsh, attended Hill College, in Hillsboro, Texas. In her little free time, she

spent time with him there or in Corsicana. Plaintiff also practiced at Cheer Athletics in Plano, Texas a few times a week.

33. On the evening of Wednesday, September 1, 2021, Plaintiff went to Hillsboro to visit Tristan. Emma and most of the other cheerleaders went to a party. When Plaintiff returned to the dorm that night she did homework and went to bed. Emma returned to the room around 4:00 am on Thursday morning and woke Plaintiff. Emma asked Plaintiff to walk her to Salvatore ("Salvo") Amico's dorm room. Salvo was a fellow rookie that Emma had kissed at the party that night. Emma wanted to invite him to their dorm. Plaintiff agreed to walk with Emma because the dorm parking lot was not safe at dark.

34. Plaintiff and Emma walked to Salvo's dorm and Emma invited Salvo to come back to their dorm. When the three returned to the girls' dorm, Emma's boyfriend—veteran cheerleader William ("Will") Hernandez—was waiting. Plaintiff went to the bedroom to go back to sleep, leaving Emma, Will, and Salvo in the living room.

35. A little while later, Emma and Will entered the bedroom and got on Emma's bed. Shortly thereafter, Salvo entered the bedroom and got on Plaintiff's bed. He began pulling off Plaintiff's underwear and pants. Plaintiff screamed at Salvo to stop, and tried to keep him from removing her clothes, but Salvo continued. He pulled her shirt up and groped her chest and then inserted his fingers into her vagina. Plaintiff continued to scream at Salvo to stop. Eventually she was able to turn her body and push him away. She told him that he needed to leave, and he left the dorm.

36. Plaintiff did not know what to do. She stayed in bed until her alarm went off and then tried to go about her normal routine. On Friday, she told several team members about the assault, and they encouraged her to come with them to a party that evening. At the party, veteran

9

Madi Brum, the team's unofficial captain, pulled her aside and asked her about the assault. Madi explained what had happened. Brum told her, "you just need to drink it off and get your mind off of it" because "that's what Navarro girls do—they drink. We don't tell anyone. We just keep it to our self." Brum told Plaintiff not to tell Coach Aldama about the assault because there was no reason to stress her out. Brum also told Plaintiff that if she reported the incident, the school would cut the cheer program, and everyone would know why and hate Plaintiff.

37. On Saturday, Brum told Plaintiff that she and Salvo needed to talk it out "like adults." Brum assigned two male cheerleaders, Joshua Stamper and Stace Artigue to accompany Plaintiff to Salvo's room. Stace Artigue and Plaintiff entered the room and Salvo apologized to Plaintiff for assaulting her. Brum then instructed Stamper and Artigue to escort Plaintiff everywhere to ensure that she did not report the assault.

38. At a time when Plaintiff was not being watched, she called Tristan and asked him to visit her. When he arrived, she told him about the assault. Tristan drove Plaintiff to his apartment where he picked up three of his friends. The five of them returned to Navarro College. Tristan and his friends went to Salvo's dorm. They saw Artigue guarding the door. Tristan exchanged words with Artigue and then left. He and his friends went to Plaintiff's dorm to help her gather some of her things. Antigue called the police to report that Tristan assaulted him, and Tristan reported Salvo's assault of Plaintiff to the officers.

39. While they were packing at Plaintiff's dorm, the campus police arrived and asked for Tristan. The police informed Tristan that Artigue reported that Tristan had assaulted him. Tristan told the police that the only assault that happened was Salvo's assault of Plaintiff. The police instructed Tristan that he was banned from campus property and that they needed to leave.

10

40. Plaintiff, Tristan, and his friends grabbed what they had packed, got in Tristan's vehicle, and left campus. They noticed a vehicle following them. Inside the vehicle was Ty Johnson and Robert Stone and several veteran cheerleaders. The veterans pointed guns Plaintiff and Tristan and threatened to kill them for reporting the assault.

41. Plaintiff called Coach Monica Aldama. When Plaintiff started to tell Aldama about the assault, Aldama interrupted her, saying, "Let's not make this a big deal. I want the best for you and I will help you cheer wherever you want." Plaintiff hung up the phone. Then Plaintiff called her mother, Terry Lane, and told her about the sexual assault. A few days later, when Plaintiff quit the cheer team, Coach Aldama told her, "If you keep quiet, I'll make sure you can cheer anywhere you want."

42. Plaintiff reported the assault to the campus police. The police discouraged her from doing so, and informed her that this type of thing happens all the time, that she can report the assault, but that nothing will happen because nothing ever happens. Nevertheless, Plaintiff reported the assault.

43. Plaintiff also reported the assault to Navarro College's Title IX office. The Title IX Coordinator, Elizabeth Pillans informed her that the office did not have the proper documentation to report a sexual assault. Instead, Pillans handed Plaintiff a sheet of paper and told her to write down the answers to some questions. Pillans discouraged Plaintiff from reporting the assault. She informed Plaintiff that neither the Title IX Office, nor the Campus Police Department, nor the Corsicana Police Department keep a rape kit on hand, and that the regional medical center does not have a SANE registered nurse. The closest rape kit available would require a drive to Waco or Dallas, Texas. Pillans told Plaintiff that if she reports the assault, there would be a court hearing, that Plaintiff would have to face her perpetrator, and everyone will hear what happened. Pillans

told Plaintiff, "The public hearing is always embarrassing and does more harm to the victim than good."

44. Several weeks later Plaintiff's mother, Terry, contacted the campus police asking about the status of the report. The person that answered the phone asked, "what report?" Terry responded that she thought the district attorney would be bringing the sexual assault that she and Plaintiff reported to the grand jury. The person responded, "no, those charges were dropped" and told Terry that there was nothing she could do to change it.

45. Terry called the Title IX office for an update. Pillans informed Terry that there is no record of Plaintiff's sexual assault, insisting instead to the report Plaintiff attempted to make as "allegations." Pillans explained that nothing happened with those allegations. Instead, Pillans wanted to discuss two different topics: (1) a report that was made after video footage showed Argitue stealing a Red Bull from the cafeteria while escorting Plaintiff; and (2) a report about Will hazing another cheerleader.

46. Because of the assault, harassment by team members, and Defendants' intimidation tactics, Plaintiff quit the team and withdrew from Navarro College. She now attends University of Texas at Permian Basin and is on its cheer team, which her mother, Terry coaches.

47. Plaintiff's dream of cheering on a nationally ranked team is over, and she has been "blackballed" from many nationally ranked programs, as they have former Navarro cheerleaders as coaches or team members. For instance, Plaintiff tried out for the Texas Tech cheer team, but Brum, a member of Tech's cheer team, persuaded the team against offering Plaintiff a position.

48. As a result of Defendants actions, Plaintiff has suffered pain, mental anguish, emotional distress, and humiliation for which she now sues.

## V.   CAUSES OF ACTION

### COUNT ONE

#### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681 AGAINST DEFENDANTS NAVARRO COLLEGE, MONICA ALDAMA, MICHAEL LANDERS, AND ELIZABETH PILLANS

49. Plaintiff hereby incorporates by reference paragraphs above as if fully set forth herein.

50. Defendants in their individual and representative capacities, failed, neglected, and refused to (1) investigate, report, and take action against Plaintiff's perpetrator, and (2) halt and implement policies against the culture of sexual harassment, sexual assault, sexual hostility, and violence of Navarro Cheer.

51. Defendants exercised control over Plaintiff's perpetrator as well as Coach Aldama and Navarro Cheer members who harassed, intimated, and attempted to silence Plaintiff, and the context in which these acts occurred.

52. Plaintiff suffered a sexual assault, harassment, and discrimination that was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by Navarro College.

53. Navarro College, through officials, including Coach Aldama, Landers, and Pillans, had authority to address the assault, violence, harassment, and discrimination and institute corrective measures on Plaintiff's behalf, and had actual knowledge of the assault, harassment, and discrimination. For instance:

   a. Aldama knew that rookie cheerleaders room together;

   b. Aldama knew that cheerleaders keep their dorm unlocked so that people can come and go;

    c.    Aldama knew that cheerleaders use the "Navarro Knock" before freely entering another cheerleader's dorm room;

    d.    Aldama and Landers knew that cheerleaders are encouraged to earn "FIOFMU" letters, which rookies may earn by performing favors for veterans;

    e.    Navarro College, Aldama, and Landers knew that Navarro Cheer has a culture of sexual harassment and sexual assault;

    f.    Aldama knew that Navarro Cheer coaches, volunteers, and cheerleaders sexually harassed and sexually assaulted other cheerleaders;

    g.    Aldama and Pillans knew of Plaintiff's assault and failed to investigate, and report the assault, or institute corrective measures on Plaintiff's behalf;

    h.    Aldama knew of prior instances of sexual assault and harassment and failed to investigate or report them, or institute corrective measures on victim's behalf;

    i.    Aldama and Pillans silenced and intimidated, and knew of silencing and intimidating by fellow cheerleaders of Plaintiff and other victims of sexual harassment and sexual assault.

54. Navarro College officials, including Coach Aldama, Landers, and Pillans, had actual knowledge of a substantial risk of abuse to students, whether or not directed at Plaintiff specifically. As demonstrated above, these officials' knowledge of risk included the kind of assault, harassment, and discrimination suffered by Plaintiff, such that these officials reasonably could have responded with remedial measures.

55. Defendants actively created and were deliberately indifferent to a culture of sexual harassment, assault, hostility, and violence within its cheerleading program by instituting policies and permitting practices that included:

    a.    Failing to properly train staff and coaches

    b.    Failing to properly supervise staff and coaches;

    c.    Failing to properly supervise student activities in the cheerleading program;

    d.    Failing to educate students, staff, and coaches; and

    e.    Maintaining a policy of not reporting and covering up allegations of sexual harassment, violence, hazing, and other sexual abuse occurring within the Navarro College cheer program.

56. Defendants' deliberate indifference to the risk of sexual abuse to Navarro cheerleaders made Plaintiff vulnerable sexual assault, violence, harassment, and discrimination, and was clearly unreasonable in light of known circumstances.

57. As a result of the actions and omissions of Defendants detailed herein, Plaintiff suffered damages.

## COUNT TWO

### VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANTS NAVARRO COLLEGE, MONICA ALDAMA, MICHAEL LANDERS, AND ELIZABETH PILLANS

58. Plaintiff hereby incorporates by reference paragraphs above as if fully set forth herein.

59. Defendants, individually, collectively, and in their representative capacities violated the Equal Protection Clause and the Due Process Clause of the 14th Amendment of the United States in their treatment of and deliberate indifference to the sexual assault suffered by Plaintiff and her harassment and intimidation by Coach Aldama, Landers, Pillans, and members of Navarro Cheer.

60. At all relevant times, Defendants were acting under color of state law. Defendants acted with the appearance of legal authority or an apparent legal right.

61. Defendants' acts, and failures to act, deprived Plaintiff of her right and privilege of bodily integrity as encompassed by the liberty interests protected by the 14th Amendment and the Equal Protection clause, including, but not limited to, encouraging, maintaining, permitting the maintaining, or failing to halt the maintaining of the following policies:

    a.    That rookie cheerleaders room together;

    b.    That cheerleaders keep their dorm unlocked so that people can come and go;

    c.    That cheerleaders use the "Navarro Knock" before freely entering another cheerleader's dorm room;

    d.    That cheerleaders are encouraged to earn "FIOFMU" letters, which rookies may earn by performing favors, including sexual favors, for veterans;

    e.    That Navarro Cheer have a culture of sexual harassment and sexual assault;

    f.    Permitting Navarro Cheerleaders to sexually harass and sexually assault other cheerleaders;

    g.    Not reporting or discouraging the reporting of sexual harassment and sexual assault;

    h.    Silencing or intimidating victims of sexual harassment and sexual assault;

    i.    Declining to investigate, punish, or hold accountable perpetrators of sexual harassment and sexual assault;

    j.    Covering up sexual assaults.

62. Defendants deliberate indifference and negligent acts exposed Plaintiff to harm by a fellow student.

63. Defendants had policy-making authority and by not acting to protect Plaintiff, they permitted, endorsed, and ratified the assault against Plaintiff.

64. Defendant Navarro College failed to adequately train employees to recognize, anticipate, and prevent the assault and harassment suffered by Plaintiff, and they were deliberately indifferent to the obvious consequences of the failure to train employees and educate students adequately, thereby depriving Plaintiff of her rights.

65. As a result of the actions and omissions of Defendants herein, Plaintiff suffered damages.

## COUNT THREE

**VIOLATION OF TEXAS CONSTITUTION, ART. I, SEC. 3A, EQUALITY UNDER THE LAW AND ART. I, SEC. 19, DEPRIVATION OF LIFE, LIBERTY, PROPERTY AGAINST DEFENDANTS NAVARRO COLLEGE, MONICA ALDAMA, MICHAEL LANDERS, ELIZABETH PILLANS**

66. Plaintiff hereby incorporates by reference paragraphs above as if fully set forth herein.

67. Defendants, individually, collectively, and in their representative capacities violated Art. 1, Secs. 3a and 19 of the Texas Constitution in their treatment of and deliberate indifference to the sexual assault suffered by Plaintiff and her harassment and intimidation by Coach Aldama, Pillans, and members of Navarro Cheer.

68. Defendants' acts, and failures to act, deprived Plaintiff of her right to equality under the law and privilege of bodily integrity as encompassed by the liberty interests protected by Sections 3a and 19, including, but not limited to, encouraging, maintaining, permitting the maintaining, or failing to halt the maintaining of the following policies:

   a. That rookie cheerleaders room together;

   b. That cheerleaders keep their dorm unlocked so that people can come and go;

   c. That cheerleaders use the "Navarro Knock" before freely entering another cheerleader's dorm room;

   d. That cheerleaders are encouraged to earn "FIOFMU" letters, which rookies may earn by performing favors, including sexual favors, for veterans;

   e. That Navarro Cheer have a culture of sexual harassment and sexual assault;

   f. Permitting Navarro Cheerleaders to sexually harass and sexually assault other cheerleaders;

   g. Not reporting or discouraging the reporting of sexual harassment and sexual assault;

   h. Silencing or intimidating victims of sexual harassment and sexual assault;

    i.  Declining to investigate, punish, or hold accountable perpetrators of sexual harassment and sexual assault;

    j.  Covering up sexual assaults.

69. Defendants acts and deliberate indifference exposed Plaintiff to harm and subsequent harassment and intimidation by Coach Aldama, Pillans, and members of Navarro Cheer.

70. Defendants had policy-making authority and by not acting to protect Plaintiff, they permitted, endorsed, and ratified the assault against Plaintiff.

71. Defendant Navarro College failed to adequately train employees to recognize, anticipate, and prevent the assault and harassment suffered by Plaintiff, and they were deliberately indifferent to the obvious consequences of the failure to train employees and educate students adequately, thereby depriving Plaintiff of her rights.

72. As a result of the actions and omissions of Defendants herein, Plaintiff suffered damages.

## COUNT FOUR

### ASSAULT AGAINST DEFENDANT SALVO

73. Plaintiff hereby incorporated by reference paragraphs above as if fully set forth herein.

74. Defendant Salvo intentionally and knowingly made physical contact with Plaintiff when he entered her bed, removed her underwear and pants, pulled her shirt up, groped her chest, and inserted his fingers into her vagina.

75. Defendant Salvo knew and should reasonably have believed that Plaintiff would regard the aforementioned contact as offensive or provocative, as Plaintiff screamed at Defendant

to stop the contact and physically tried to keep Defendant from removing her clothes and engaging in the contact.

76.  As a result of Defendant's actions, Plaintiff has suffered pain, mental anguish, emotional distress, and humiliation for which she now sues.

## *RESPONDEAT SUPERIOR*

77.  At all relevant times to this complaint, Defendants Monica Aldama, Michael Landers, and Elizabeth Pillans were the agent, servant, or employee of Defendant Navarro College and were acting within the course and scope of their authority as such agents, servants, or employees. Thus, Navarro College is vicariously liable for the negligence of Aldama, Landers, and Pillans under the legal principles of agency and/or *respondeat superior*.

## VI. DAMAGES

78.  As a result of Defendants' wrongful acts, Plaintiff is entitled to reasonable and proper compensation for the following legal damages:

  a. Past and future physical pain, suffering, mental anguish, and emotional distress;

  b. Economic damages,

  c. Punitive damages;

  d. Reasonable attorneys' fees and costs;

  e. Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

79.  Plaintiff seeks actual damages in an amount within the jurisdictional limits of this Court.

## VII. JURY DEMAND

80. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury.

## VIII. PRAYER

81. Plaintiff prays that she have judgment against Defendants, jointly and severally, for actual damages shown and proved at trial, for pre- and post-judgment interests, for reasonable attorneys' fees and costs, and for all other relief, legal and equitable, to which she is justly entitled.

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

By: /s/ W. Mark Lanier
W. MARK LANIER
State Bar No.: 11934600
Judson Waltman
State Bar No.: 00797621
10940 W. Sam Houston Pkwy N., Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Fax: (713) 659-2204
E-mail: jud.waltman@lanierlawfirm.com

ATTORNEYS FOR PLAINTIFF