IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MADI LANE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:23-CV-00883-N |
| | § | |
| NAVARRO COLLEGE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Navarro College's partial motion to dismiss [21] Plaintiff Madi Lane's Title IX claim based on Navarro College's conduct before the alleged September 2, 2021, sexual assault of Lane and her report to Navarro College regarding the assault.  Following the criteria set out by the Fifth Circuit for a "pre-assault" claim under Title IX, the Court concludes that Lane failed to plead sufficient facts to state a plausible claim for relief against Navarro College.[1]  Accordingly, the Court grants Navarro College's partial motion to dismiss.

## I. THE ORIGIN OF LANE'S TITLE IX CLAIM

On September 1, 2021, Co-Defendant Salvatore Amico allegedly sexually assaulted Madi Lane.  Pl.'s First Am. Compl. ¶ 32 [17].  Both individuals were students at Navarro College and rookie[2] cheerleaders on Navarro Cheer, the school's cheerleading squad.  *Id.*

---

[1] Title IX distinguishes between liability for the assault based on pre-assault conduct of the College and liability for an inadequate response after an assault is reported.
[2] Freshman cheerleaders are called "rookies" and upper-class cheerleaders are called "veterans."  Pl.'s First Am. Compl. ¶ 16.

ORDER – PAGE 1

Navarro Cheer is one of the top junior college cheerleading programs in the nation and gained notoriety from the Netflix documentary series entitled *Cheer*, which featured the Navarro College cheerleaders.  *Id.* at ¶¶ 2-3.

In the three years prior to Lane attending Navarro College and joining Navarro Cheer, affiliates of Navarro Cheer were involved in at least four scandals involving sexual misconduct.  *Id.* at ¶ 10.  First, in 2018, a volunteer coach allegedly drugged and sexually assaulted a former Navarro cheerleader while at competition.  *Id.* at ¶ 11.  In the victim's suit, the victim alleged that the volunteer coach "would 'slap and hit male cheerleaders' and make them 'drop their pants at his command.'"  *Id*.  The victim also alleged the volunteer coach "had hundreds of nude photographs of the cheerleaders and used them as blackmail to force them to 'drink and/or consume drugs," calling it 'big girl games.'"  *Id.*  Second, in 2020, a former Navarro cheerleader was arrested on a charge of production of child pornography.  *Id.* at ¶ 12.  Third, in 2021, a Navarro cheerleader was charged with sexual assault against a child when he used the ruse of practicing cheer stunts to invite a 15-year-old girl to his apartment to forcibly assault her.  *Id.* at ¶ 13.  Last, in 2021, former Navarro College cheer athlete and choreographer "was arrested and charged with taking indecent liberties with a child and use of an electronic communication device to solicit sex."  *Id* at ¶ 14.

Beyond these incidents of sexual misconduct, Lane alleges that Navarro Cheer had a "pervasive culture of sexual violence and sexual harassment."  *Id* at ¶ 20.  Lane alleges that team members were required to "leave their dorm rooms unlocked so as to permit [team] members to freely come and go with the use of a specific knock" called the "Navarro

ORDER – PAGE 2

Knock." *Id.* at ¶ 16.  Lane alleges that Coach Aldama, head coach of Navarro Cheer, not only knew of the team's use of the Navarro Knock, but also approved of the team's use and enforcement of the knock.  *Id.*  Furthermore, the team had a practice of awarding the letters "FIOFMU," which allegedly stands for "Fight it out, f*** 'em up!"  *Id.* at ¶ 17. Though Lane alleges that Navarro College's Director of Athletics told the team that awarding the letters was prohibited, Lane cites a quote of Coach Aldama in Women's Health Magazine where she acknowledges the use of the letters to provide "encouragement to make it through [the cheerleading season]" *Id.* at ¶ 18.  Lane further alleges that "the letters were currency in a dark game where coaches and veterans bribed rookies to run errands, party, and perform favors."  *Id.*

Lane sued Amico for assault and sued Navarro College for violation of Title IX. Navarro College now requests that the Court dismiss Lane's claim for pre-assault liability, arguing the College was not deliberately indifferent to a known risk of harm prior to Lane's alleged sexual assault.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

When ruling on a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

ORDER – PAGE 3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pled facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).

### *B.  Title IX*

"Title IX states: 'No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'"  *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting 20 U.S.C. § 1681(a)).  "This provision of Title IX may be enforced in a private lawsuit for monetary damages."  *Carmichael v. Galbraith*, 574 F. App'x 286, 289 (5th Cir. 2014) (unpub.) (citing *Gebser v. Lago Visa Indep. Sch. Dist.*, 524 U.S. 274, 281 (1989); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

"A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red]

ORDER – PAGE 4

the victim's access to an educational opportunity or benefit,' and (5) the district was deliberately indifferent to the harassment." *Sanches*, 647 F.3d at 165 (alteration in the original) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)).  Navarro College takes issue with two of the above elements — the first and the fifth elements.

### III. THE COURT DISMISSES LANE'S PRE-ASSAULT CLAIM

#### A. Navarro College Did Not Have Actual Knowledge

"The first element, actual knowledge, means that the school must have actual, not constructive, knowledge of sexual harassment."  *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022).  For pre-assault liability, the knowledge element requires that Navarro College "actually knew that there was a substantial risk that sexual abuse would occur."  *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652–53 (5th Cir. 1997).  As examined in *M.E. v. Alvin Indep. Sch. Dist.*, Supreme Court and Fifth Circuit precedent "illustrates the difficulty of meeting this actual knowledge requirement." 840 F. App'x 773, 775 (5th Cir. 2020) (unpub.).[3]

---

[3] *See Gebser,* 524 U.S. at 291 (Holding that though the school received complaints of the teacher "often making sexually suggestive comments" in class, this alone was "plainly insufficient" to give the school actual knowledge that the teacher was in a sexual relationship with a student.); *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 363–64 (5th Cir. 2020) (A report that a student spent time at the student's chemistry teacher's house did not put the school on notice that the same teacher engaged in a sexual relationship with another student.); *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 954 (5th Cir. 2015) (unpub.) (The school district's knowledge that a student had previously assaulted a female minor, fell "far short of Title IX's stringent actual-knowledge standard" when the school had a review of the student's behavior and concluded that there was "no indication that [the student] was acting out sexually or bullying his classmates.")

ORDER – PAGE 5

Lane alleges that both through the public nature of the sexual misconduct scandals and through Coach Aldama's actual knowledge of the team's practice of using the Navarro Knock and awarding letters, "Navarro College was aware of Navarro Cheer's pervasive culture of sexual violence and sexual harassment." Pl.'s First Am. Compl. ¶ 20. When comparing the facts of the instant case to the cases examined in *M.E. v. Alvin Indep. Sch. Dist.*, the Supreme Court and Fifth Circuit determined that school officials did not have actual knowledge, even though the victim's assailant was involved in the previous events cited by the plaintiff to attribute actual knowledge to the school. *See* 840 F. App'x at 775. Importantly, none of the assorted events cited by Lane involved either herself or her alleged assailant, Amico. *See generally* Pl.'s First Am. Compl. at ¶¶ 11-22.

Zeroing in on this distinguishing point between Lane's case and previous case law, Navarro College relies on the recent Fifth Circuit case *Roe v. Cypress-Fairbanks Indep. Sch. Dist.* to support its assertion that liability under the "pre-assault" theory of Title IX requires that the "school must have specific awareness of a threat of sexual misconduct by the perpetrator to a particular plaintiff." Def. Navarro College's Reply 2 [29] (citing 53 F.4th 342 (5th Cir. 2022)). But *Roe* does not lend itself to this bright-line rule in every case. In fact, the Fifth Circuit noted "[w]e have not defined precisely whether and to what extent the harassment of persons 'other than the plaintiff' may constitute actual knowledge of the plaintiff's specific risk of Title IX harm." *Roe*, 53 F.4th at 342 (quoting *Edgewood Indep. Sch. Dist.*, 964 F.3d at 363). But the Fifth Circuit further explains, "assorted incidents of sexual misconduct involving neither the Title IX victim nor the aggressor are *generally insufficient* to give a school district actual knowledge of the plaintiff's assault."

ORDER – PAGE 6

*Id.* at 342 (emphasis added). This language suggests there are cases where "assorted incidents of sexual misconduct" would be sufficient to give a school actual knowledge of the substantial risk of a victim's sexual assault. Nevertheless, without further guidance from the Fifth Circuit of when and how this potential exception could apply, the Court concludes that the assorted nature of the alleged facts of the instant case are even more "assorted" in nature than the facts of *Roe* that the Court does not find reason to distinguish this case from *Roe*'s holding.

In *Roe*, the school had a "history of student sexual conduct in stairwells" where Roe's boyfriend assaulted her. *Id.* at 342. The Fifth Circuit concluded that this fact along with compiled "employees' recollections of dating violence and other sexual misconduct on campus" between students were "genuinely disturbing," but these facts failed to show the school's "actual knowledge of Roe's risk of sexual assault." *Id.* at 341-42. Like *Roe*, Lane cites assorted events involving sexual misconduct and the Navarro Cheer team and, like the Fifth Circuit, though the Court finds these assorted events disturbing, these events do not show that Navarro College had actual knowledge of Lane's risk of harm. Furthermore, unlike *Roe*, where the alleged past incidents also occurred in the same location of the stairwell and between students, none of the past events of sexual misconduct occurred between students at Navarro College or in the dorms of Navarro College. *See* Pl.'s First Am. Compl. ¶¶ 11-14. When the assorted events cited by Lane have less congruency to her alleged harm than those events in comparison in *Roe*, the Court cannot conclude that Lane pled sufficient facts to meet the high standard of showing that Navarro

College had actual knowledge that there was a substantial risk that sexual abuse would occur based on these assorted events alone.

Lane attempts to bolster her pre-assault claim by alleging that Navarro Cheer has a pervasive culture of sexual harassment and sexual violence. *See Id.* at ¶ 20. The two primary allegations that go towards Lane's "culture of sexual harassment and violence" claims are the team's practice of awarding letters for sexual favors and the use of the Navarro Knock to give teammates free access to any cheerleader's dorm. First, Lane alleges no facts to support the allegation that students awarded letters in exchange for sexual favors; therefore, the Court disregards this allegation as conclusory. *See id.* at ¶ 18. Second, Lane alleges no facts that the Navarro Knock was implicated in an incident involving sexual misconduct to allow the Court to infer that Navarro Cheer had a culture of sexual harassment and violence based on this fact alone. *See Id.* at ¶ 16. Accordingly, the Court concludes Lane pled insufficient facts to show that Navarro College had actual knowledge of her risk of harm to support a pre-assault liability claim.

### B. Navarro College Was Not Deliberately Indifferent

Even if the assorted scandals gave Navarro College actual notice of Lane's risk of harm, Lane alleges no facts to believe Navarro College acted with deliberate indifference in response to this knowledge. Like actual knowledge, deliberate indifference "is also a high bar." *Roe*, 53 F.4th at 341. Deliberate indifference goes beyond negligence. *See id*. For Navarro College to be deliberately indifferent, its response to the assorted scandals must be "clearly unreasonable in light of the known circumstances." *Sanches*, 647 F.3d at 167 (quoting *Davis,* 526 U.S. at 648). A court cannot infer an educational institution acted

ORDER – PAGE 8

unreasonably because a student fell prey to a known risk of harm.  *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (Officials "who actually knew of a substantial risk . . . may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").  Lane pled no facts regarding Navarro College's response to the assorted scandals except for the conclusory statement that "Navarro College was deliberately indifferent to the risk of sexual violence that [Lane] might experience as a member of its cheer team, in light of its knowledge of, and failure to remedy, cheer team culture and prior occurrences of sexual violence in connection with the cheer program." Pl.'s First Am. Compl. ¶ 60.  Without more facts regarding Navarro College's response to these scandals, the Court is unable to infer that the college's response was clearly unreasonable; therefore, the Court concludes that Navarro College was not deliberately indifferent to a known risk of harm.

## CONCLUSION

The Court grants Navarro College's partial motion to dismiss because Lane failed to plead sufficient facts that Navarro College had actual notice of Lane's potential risk of harm.  Because Lane has not requested leave to amend, the Court dismisses Lanes pre-assault claims against Navarro College with prejudice.


Signed January 8, 2024.


_____
David C. Godbey
Chief United States District Judge


ORDER – PAGE 9